Good morning, Your Honors. My name is Louis Turan, representing the appellant, Hani Sharaf, in this case. I would like to reserve three minutes for rebuttal. That's fine. May I please support? Please speak into the microphone. Yes, Your Honor. This case, in essence, has two primary issues. The first issue is the implied rescission of a written contract, and the second one is statute of limitations. I'd like to begin discussing the first issue by framing this concept that contracts are extremely valuable and important in the world we live in today, especially in the business world. It is important that contracting parties have an appropriate level of confidence and assurance that the contracts they're entering are going to be legally binding. And when such allegations of implied rescission are brought forth, it's important that they are met by the courts with a healthy level of skepticism and scrutiny, only because the concept of implied rescission is not one that is consistent with the habits of typical contracting parties. People don't go out of their ways to negotiate, draft, and execute an agreement, a written agreement, to then later impliedly rescind it. And so for that reason, the concepts that we're proposing here are not novel. These are concepts that have been established by other courts in the past. The concept that implied rescission, the standard for such, must be high. The standard that evidence of implied rescission must be clear, unequivocal, and decisive. The concept that the conduct that is relied on for implied rescission must be inconsistent with the contract at issue, one that makes performance of the contract an impossibility. Can I ask you this? The contract is not – your client doesn't have his own individual contract with the company, right? It was a three-party contract, and we do know that the one key party did sort of explicitly renounce, or at least in his declaration said that, yeah, he had definitely rescinded it. And I guess to me it just seems like that should be the end of it. Why would – the contract can't stand without that key player being involved, and so your client thinking that somehow he can still claim his 24-point-whatever percent of the company just seems completely wrong to me. So maybe you can help me just understand why we're even here. Absolutely. Well, because, Your Honors, my client performed his duties, right? He didn't know that this other party had rescinded his rights to the contract. In fact, I mean, that's in declaration. There isn't a clear evidence of such. There's no written document that determines that. My client performed what he was supposed to do. Right. But let me just – hang on. And so if he had – if it was just a two-party contract, then maybe you'd be in business, right? But it's not. It's a joint enterprise that he, on his end of the contracting side, agreed to undertake. And if his partner decides to abandon ship, I don't see how he has an ability to enforce – you see what I'm saying? Right. No, I understand that. And one thing to keep in mind is that in this particular case, the actual performance, my client's actual performance, was conditioned on Starbuzz, the appellee here, acting first. Right? And they did so. Right? The one thing that Starbuzz had to do was to provide a physical location for this manufacturing, this factory, to be set up in. What did Bassam say about – Every indication was – I'm sorry? What was – what did Bassam say about when he backed – at what point did Bassam claim to have backed out? That is unclear, Your Honor. There is declaration that states that in 2009, Bassam did travel to the United States along with Hani Sharaf to set up this facility. Right? And then there is declaration he states that he left but Hani Sharaf remained. He stayed here to set up the facility. So it's unclear as to at what point he actually renounced the agreement. I don't think he ever did, not in writing for sure. There is no clear evidence as to when he actually did this. What proof in the record is there about the topic of Bassam's rescission other than his declaration? That's all there is, Your Honor. And that was submitted in support of a motion for summary judgment. That is correct, Your Honor. Your point is that that may be true, and if it's believed, it may fly that you lose but that you're entitled to litigate and you can't win just based on Bassam's – the other side can't win just based on Bassam's declaration. That is correct, Your Honor. This is a fact-intensive case that should be litigated. It shouldn't – it should end in summary judgment like it did here. There are a lot of issues of credibility and weighing of the evidence and such. But you're not disputing as a factual matter that Bassam, in fact, did walk away from the agreement, right? That's not in contention. No, we are disputing that, Your Honor. We believe that this is something that he – What evidence did you have to refute what he said in his declaration? Well, like I said, we rely on the actual performance of us, of Hani Sheriff. It doesn't make sense for him to have done all this work for these many years, right, and then in 2011 for Starbuzz to come in and give him the employment that he was required to give him pursuant to the terms of the agreement when such agreement was rescinded to begin with, right? The evidence is our performance, not just our performance but the performance of Starbuzz as well. Well, maybe you can address then this whole purchasing of the equipment issue. Right. So, yeah, so the issue of the purchasing of the equipment, and this kind of goes back to – goes into the statute of limitations as well. The construction of the agreement, right, the way it was constructed by the district court, we believe it was oversimplified to being an agreement for the installation or purchase of equipment. That is not what this was. The essence of this agreement was to set up a manufacturing facility, not just the equipment but the process as a whole. The essence of the agreement, what it actually says, what they agreed to do was to produce tobacco. Well, it was to set up the manufacturing in all aspects of it and to produce tobacco to a certain level of quality, right? Setting up the equipment was to the end of producing tobacco of that level of quality. Yes, of course. Setting up the equipment was one of the things that were required to be done by us, by Hany Sheriff. And then there was the issue of the payment of the equipment. That was raised in this case as well in trying to allege that we breached the agreement and therefore at that point the agreement was rescinded. But that's not the case because we contend that that was a partial breach. It wasn't a material breach. It doesn't go to the essence of this agreement, and still we dispute that such did happen. We have declaration from Hany Sheriff that he did pay for the equipment and Apelli is relying on a couple of things. Part of the equipment. Part of the equipment, yes. He paid his share of the equipment and Apelli is relying on these two invoices. As opposed to Bossom, is that what that means? I'm sorry? Because according to the contract, Hany and Bossom are supposed to pay all of the costs for the equipment. Correct. So is he saying that his share is not Bossom because Bossom didn't pay for it? Is that the point? No, I believe that Apelli is raising the idea that the equipment was paid for by them, by Starbus. I understand that, but your client says he paid for part of the equipment. Yes. But the contract doesn't say part of the equipment. It says all the equipment. Right. They're supposed to be paid by both Bossom and himself. I see. And our position is that we paid for what we were supposed to pay for the equipment. Bossom then subsequently requested reimbursement from Starbus for that equipment, and they rely on a couple of invoices that don't make sense with one another. We have an invoice that is issued by Bossom's company to Starbus seeking reimbursement, but then we have an invoice from the manufacturer of the equipment issued to Bossom's company, and we have a declaration from Hany Sheriff that he paid Bossom for the equipment that he was supposed to pay for. Does Hany ever avert that Bossom – Bossom says in his declaration, sort of in passing, that they mutually abrogated the agreement in 2005, right? Right. And Hany says, no, that isn't true. Right. Bossom never says, I personally, myself, did this without Hany, right? Right. Okay. In fact, he says throughout the agreement, he says, in fact, I sold tobacco to other entities, other third parties, which is inconsistent with the agreement. That is something that he says in his declaration. So his averiment with regard to the voiding of the agreement is just contrary to Hany's, basically. Correct. Completely contrary. Did you say a key issue that was in dispute, and it involved material facts, was whether exporting tobacco from Jordan to Starbus is inconsistent with Hany setting up a production facility in the United States. I'm not quite sure why there's a material dispute there other than the conflict that the court identified. Well, the issue – And what significance it has if it's there. Right. Could you help? Yeah, absolutely. So the issue of exporting tobacco from Jordan to the United States for Starbus is based upon these other agreements that were entered. But one thing to keep in mind, one of the agreements, the export agreement that specifically speaks to this, is an agreement that Hany Sheriff was not a party to. He never signed that agreement. That agreement was between Starbus and a company in Jordan that is partially owned by Hany. And that agreement required that company, not Hany Sheriff, but that company, to do the exportation of tobacco. Could you go to the limitations period questions? Yeah. The statute of limitations, the entire statute of limitations issue here revolves around the construction of the contract. The question is, when did Hany Sheriff complete his performance? This is my question. I'm not sure he ever completed his performance because the central provision is, the principal tasks of Hany and Basim shall be to produce and use all tobacco of all kinds. They never produced tobacco. Well, our contention is that we did produce. We did set up the facility and we did produce tobacco as of 2011. I thought you never produced tobacco. Did tobacco ever come out of that plant? I'm sorry? Was there ever any tobacco produced in that plant? Yes. Yes, tobacco was produced in that plant. Now, they're asserting that today there is no tobacco being used in that plant. And they're saying that the equipment that Hany used and set up are unused and collecting dust. I mean, that's the reason why they're not producing tobacco today. I gather you are arguing for the date being July 2011. Which was? Which was the day in which Starbuzz refused to give Hany the ownership. But when was the equipment put in? The equipment itself was set up in 2009. When was the tobacco produced? In 2011, which is at the time when. . . Why isn't that the more sensible date? The day the tobacco was produced. Yeah, exactly. That's exactly our argument. He couldn't have claimed his money before that, could he? Correct. That's absolutely correct. He couldn't have claimed his money in 2009 when he simply set up the equipment as a district court found. He had to wait until the tobacco was produced. It was. . . This was not an agreement to set up equipment. This was an agreement to set up the factory and produce tobacco, which did not happen until 2011. You never. . . Your brief would seem to be relying on some other date. I mean, it wasn't until I looked at this carefully that I thought the production date mattered. Because that's not really what you've been saying. You've been saying what mattered was the date that they got this visa for him and then. . . I apologize if I was ambiguous. What I was trying to convey is that the fact that Starbuzz went ahead and applied for this visa and gave Honey Sheriff employment is evidence that that is when Honey Sheriff's performance was completed. Otherwise, Starbuzz wouldn't have done that. Those are one of the requirements of the contract is that when the. . . But that's sort of ambiguous because what they were hiring him to do was not to produce tobacco. They were hiring him to be the chief financial officer, they said. That is correct. Yeah, that is a position that they wanted to give him as chief. At least that's what they told the United States government. Maybe it was a ruse to get a visa, but that's what they told him. Yes, Your Honor. I think I'm running out of time. I'd like to reserve. Okay, that's fine. Thank you. Good morning, Your Honors. May it please the Court. My name is Natu Patel of the Patel Law Firm, and I represent Appellee Starbuzz Tobacco. Your Honors, I would like to briefly address two issues. One, the undisputed evidence shows that the parties had abandoned or mutually rescinded the 2005 agreement. What is inconsistent about producing tobacco in Jordan and producing tobacco in the United States? Aren't there many companies that produce tobacco in two different places? Your Honor, many companies can produce. Here, the principal purpose of the primary purpose of 2005 agreement was for Honey and Basam to come to United States and produce tobacco in the United States. If they were required, pursuant to 2007 and 2008 agreement, if they were required to stay in Jordan and ship the tobacco to Starbuzz from Jordan, how could they be in two places, Your Honor? It's not difficult. I mean, you fly back and forth. I don't get it. Many people do it. Your Honor, however, there is no—there is uncontroverted evidence that they actually—2005 agreement was completely rescinded. Why does the—well, it certainly is disputed, but why do you say that? Because, Your Honor, it's the primary purpose of the 2007 agreement, where Honey and Basam were required to export 100 tons of tobacco from Jordan to United States, is inconsistent with the purpose of the 2005 agreement. Why is it inconsistent? You don't think there are any companies that produce something in one country and export it and also produce something in the United States? Because Starbuzz was a small company, Your Honor. In 2005, it was just growing to be a small company. It was exploring that possibility. And, Your Honor, one of the most important things—I want to bring it out to court's attention— is that over the years, the parties' relationship keep changing from— That's a different question than Judge Barzon was asking. And I'm interested in it, too. It is—it's almost—it seems to me to be not at all unusual that a company brings tobacco from outside the United States and uses it either to make a brand of tobacco or to mix it with somebody else's, some other kind of tobacco, to do a blend. And all they're talking about is setting up complementary operations, and that doesn't mean that they're inconsistent, it seems to me. And I'm having trouble with your argument, so if you'd help me. Yeah. Your Honor, first of all, there was a 2005 agreement, and then there was a 2007 agreement, and then parties contemplated to form a new company in 2008, which was a Starbust in Jordan, to create the manufacturing. And did they ever say forget the United States project? Yes, Your Honor. Where are they saying that? In 2009, parties again looked at the possibility of producing— But I'm asking you where in the 2007 and 2008 agreements they ever said, and this is in lieu of producing tobacco in the United States. Your Honor, all these agreements, they have an integration clause. None of these agreements refer to each other. Of course they do, but they only pertain to producing tobacco in Jordan. But did they ever say and forget the one in the United States? No, Your Honor. But at the same time, as I think this Court properly asked the question earlier about Bassam's declaration, Your Honor, and Bassam's declaration— I'm just telling a different story. He says it was abrogated and Hani says it wasn't, so there's a conflict. But, Your Honor, Bassam was the primary purpose who was three-party agreement to become to United States. Well, Bassam didn't say I backed out in 2005, but Hani stayed in. Bassam said the whole thing was abrogated in 2005, and Hani says it wasn't. So why isn't that just a conflict in the evidence? But, Your Honor, they had ample opportunity to also take a deposition of— And Bassam doesn't say anywhere, as I recall, that—what he's saying is sort of conclusory. He never says we had a discussion and we decided that we weren't going to do this anymore. He just sort of says conclusorily that we abrogated it, right? No, Your Honor. I think Bassam filed a declaration November 2014, and there was another declaration December 2015, and he says very clearly that he did not want to come to the United States because, one, he did not want to invest the money, and, second, he had a wife and three kids, and he did not want to come to the United States. He was the uncle of Hani Shara. But Hani is one—learned everything from Bassam. It was Bassam's company. Bassam was a primary individual, Your Honor, and it's at exception of record 706 through 711, Your Honor. The point is this, Your Honor, there are a lot of speculation as to what parties could have done. What district court did is look at the uncontroverted evidence to determine the implied rescissions issue. Your Honor, in addition to that, there are parties' other conducts. For example, Your Honor, let me just—please allow me to focus on other conducts that also shows the 2005 agreement was rescinded. First, under Article 8 and 11 of the 2005 agreement, Hani was required to produce Mosul tobacco for Starbuzz in the U.S., equip the tobacco factory at his own expense. This did not happen. To the contrary, from 2006 to 2011, Your Honor, Hani acquired tobacco from Jordanian suppliers for the Starbuzz. This is not what the 2005 agreement contemplated. Additionally, to date, Your Honor, Starbuzz does not have the production facility that Hani was required to equip for the 2000 agreement. But wait a minute. My understanding is that your client was supposed to go and find a location in the United States. They did that, right? Yes, Your Honor. And he was supposed to supply the equipment, and he says he did that. He paid for it at least in part. He says that. Okay. He says that. Now, you know, you have a trial, and it may all turn out to be a lie, but he says it. So why were they doing all this stuff pursuant to no contract at that point? Yes, Your Honor, there was pursuant to no contract at all. But let me please address your question, Your Honor, about Hani's payment. Why was Hani, in his view, he says, paying for some of this equipment? First of all, Your Honor, Paragraph 26 of Hani's declaration talks about that he paid, and there was an Exhibit E attached to Paragraph 26 with district court discounted because it was in Arabic. We don't understand what that exhibit is. Second, Your Honor, Hani just makes a self-serving statement without any ---- Every statement in summary judgment self-serving is his statement. That's his declaration under penalty of perjury, and it may be a lie. Your Honor, as district court correctly pointed out in one of the footnotes, Hani's declaration does not explain what he means by my share. It does not say how much amount he paid, who else was obligated to pay remaining share, and Your Honor, as I mentioned, did not ---- Hani did not challenge the inadmissibility of the check in his opening appellate brief, and therefore he has also waived that argument. But besides that, Your Honor, even ---- I think that really we've ---- I'd like to hear, if you don't mind, your discussion of the statute of limitations. Yes. And when it is that you think the contract limitation ran out, and when it is you think the fraud limitation ran out, and what statement in the record allows us to find what Hani suggests, which is that he says that Starbuzz began performing its contractual duties soon after he completed performance in early 2011, and the filing of the I-129 petition was a sign that it would provide him with ownership and interest in the coming months. And why wouldn't that stop the ---- let him believe that maybe he still had a claim? Your Honor, I'll start with the breach of contract statute of limitation. There's four years, and it starts regardless whether any damage is apparent, as this Court is well aware. In evaluating the statute of limitation, the district court relied on intrinsic evidence and a 2005 agreement itself, and did not engage in a credibility determination. Your Honor, Hani completed his installation of equipment when he was ---- But the statute says that the principal tasks of Hani and Bassam shall be to produce new cell tobacco. All costs and expenses shall be on Starbuzz. Starbuzz shall provide to Hani and Bassam the material and other things required to enable them to conduct the production process. And in a different section, it says that Hani and Bassam shall be obligated to equip the place of the production, and the cost shall be on them. But the central part of the contract is producing tobacco. So until ---- If he had showed up in 2009 and said, okay, I've equipped the plant. Let's assume there really was a contract. Now, you know, give me my ownership interest. I assume they would have said, of course not. We haven't produced any tobacco yet. Your Honor, 2009 parties tried. Hani came to the United States and tried to install the equipment. But that was pursuant to different arrangement. Well, right, but we're assuming for present purposes that there was, in fact, still a contract. That this contract was still in effect for purposes of limitations period. Purpose of statute of limitations, Your Honor, 2009 is when Hani claims that he installed the equipment, is what the statute of limitations should start. Yes, I'm asking you why is that the trigger period when, in fact, he had not yet performed the principal task. What the contract specifically says is the principal task to produce musal tobacco. Because he did produce in 2009. I think, Your Honor, the 2011, when he's mentioning 2011, he falls under that whatever else is required. He says that I was required to do training. And I think what District Court correctly points to ---- When was it? Did any tobacco ever come out of this plant? In 2009, yes, for a few months. He says it was 2011. So who's right? No, Your Honor, record is very, very clear about that. Record is very clear. And I think Judge Selna focused on that same issue. Because what Hani was trying to move the statute of limitation issue under the clause of whatever else. Where in the record does it say that there was tobacco produced either in 2009 or 2011? I think, Your Honor, in Appellant's reply brief, it's all over the place. I believe also ---- It's all over the place? Your Honor, Hani claims ---- these are relevant paragraphs, Your Honor. Hani claims he installed the equipment in or around 2009 when he set up the equipment in the U.S. It accepts a record 64 through 65, paragraph number 27 through 33. I understand. That's when he set up the equipment. I want to know when did he produce tobacco? When did the plant produce tobacco? Your Honor, it's also part of the record. Okay. Where is it? If I knew, I wouldn't be asking. I don't know. Your Honor, it is part of the record, unfortunately. It's, Your Honor, Bassam's declarations also. I thought Bassam had nothing to do with anything at this point, or at least that's what he says. Pardon? Bassam says he wasn't involved anymore. No, no, Your Honor. The 2009 is also covered in Bassam's declarations, Your Honor, which was part of the ---- which is also part of the ER 705. And, Your Honor, if you look at Bassam's declaration, ER 709 and 710, it says in paragraph 13, paragraph 12 to paragraph 14 of Bassam's declarations, it talks about that the productions that he came to United States in late 2009, and paragraph 14, Bassam says to set up the production facility, start what had already purchased the manufacturing equipment, and paragraph says, I spent approximately two months trying to replicate the process, but eventually came to the conclusion that I could not produce the same quality of tobacco here as I had achieved in Jordan to the differences in ingredients. So, yes, Your Honor, that is 2009. And then ---- But he says he didn't produce the tobacco. No, no, no. He said he tried, but he couldn't produce it. That's all they did, Your Honor. There was never, ever production even today. All right. Well, we'll have to ask him. I mean, I just don't know the answer to this question. When in favor was tobacco produced? Go ahead. And, Your Honor, with respect to just one issue, I would like to bring it out with respect to fraud. Even though if you were to go, 2009 should be the date from the fraud statute of limitation began, but even, Your Honor, if you were to follow the Hani's subjective interpretation, in paragraph 34 of his declaration, he says, I completed all my terms in or around early 2011, and then I-129 was filed in January 11, 2011. So if you were to even follow Hani's subjective interpretation, Your Honor, his fraud claim began to accrue in early January 11 when Starbuzz did not give him the shares. Therefore, he should have filed his lawsuit by January 2014. He filed in April 2014, statute of limitation bars his fraud recovery too. Your Honor, one last point I want to make is that Hani's text messages, he sends the text message July 2011 that the same month he claims Starbuzz breached, and that text message says a lot of things about how much he appreciated Starbuzz and everything. Your Honor, I'm out of my time. Thank you very much. On the fraud statute of limitations, he says that the petition was filed in January of 2011, that that marks the commencement of the notice period for the running of the fraud statute of limitations, and the case wasn't filed until April of 2014, so the three-year statute runs. Why doesn't that create a fact issue that requires the jury to decide whether it's barred by the statute of limitations? It does create a fact issue, Your Honor. Why does it? Why does it create a fact issue? Why does it really? Well, first- Because you don't contest the date of when the petition was filed. Right. All right, so you, at that point in time, were on notice, right? Well- Or should have been on notice that something was wrong because they didn't, right after that, they didn't give you your shares. Right. At that point in time, it starts to run, according to the defense. Why doesn't it start to run sometime in January of 2011 when, as to the fraud claim? Right. So on the fraud claim, right, the standard is the statute of limitations begins to run when you or should have known that they weren't going to perform. In January 2011, they submit the application to offer us the employment. We're waiting for approval of the application. Then comes July. July is when everything is set up. The immigration authorities have approved the application. We're ready to come to the United States to begin our employment. That's when Hani's sheriff says, by the way, where is my ownership interest? You're saying the filing of the petition was until he had the, actually had the visa, which he had in July. Is that right? Right, correct. Correct. The filing of that petition was in January. He wasn't in a position to come and finish his project or something like that. Right. So January 2011 when they submit the application. And then July 2011 is when the application is approved. He's ready to come to the United States to relocate here and start his employment. That's when he says, where's my ownership interest? And that's when Starbucks is going to do it. I seem to be the only one interested, but I'd like to know what in the record, you say that the record shows that the projection didn't occur in 2011. Where is that? The production didn't, well, we have the declaration of Hani's sheriff. Right. And what does he say? He says that he completed production in 2011. He completed production, meaning he produced tobacco? He produced tobacco according to the standards that Starbucks wanted. Starting in 2011, he says? 2011. This is what is. And that's in his declaration? That is in his declaration. Do you know on what page it is? That is in his declaration. I have it right here. And where is that in the excerpt of the record? Paragraph 30, the 2005 agreement also required me to set up the entire production.  Well, what page of the excerpt of the record is it? This would be on page ER 65. Okay. Thank you. That's his declaration. What paragraph? I'm looking at paragraphs 30 through 34. You said in your argument that there was production in 2011 up to the standards, but was there production, as your opponent says, in 2009 of any kind? Right. So, yes. I mean, once they set up the equipment, they tried to produce, but they weren't able to produce to, you know, the agreement says, right, that it has to be, you know, based on a certain quality. I think the United States standards is what the agreement says. Production has to be based on those standards. So the production of 2009 doesn't mark the production of tobacco that met the standards. That is correct. That is correct. Because, you know, there's, you know, you can produce something with an equipment that's newly installed, but that's certainly not product that is marketable and, you know, ready to be sold to the public. It's not mass production. The mass production didn't take place until 2011. I'm not finding what you said was wherever it was, but we'll find it. Okay. The other thing I want to point out is this concept, this idea that Starbuzz, in 2008, decided to switch from having a factory in the United States to having a factory in Jordan. They based this agreement on this 2008 agreement. Right. But if you look at the 2008 agreement, that is not what it says. The 2008 agreement is for the setup of a factory in Jordan, not for Starbuzz. Right. The 2008 agreement, I believe, is Section 4, says that the owners of this factory are going to be as follows and identifies the parties, the shareholders, who are going to be owners of that factory. Starbuzz is not one of them. There is no evidence that at one point Starbuzz said, I'm going to abandon this concept of having a factory in the United States and move over to Jordan. That simply did not happen. Okay. Your time is up. Thank you very much. Thank you. Thank you. Thank you both for your argument. Sheriff v. Starbuzz Tobacco is submitted, and we'll go to the last argued case of the day, Bullock v. Philip Morris.
judges: Berzon, Watford, Payne